CENTRAL STATES ELECTRIC COMPANY, C. S. WOODWARD, Intervener, Appellants, v. HANCOCK COUNTY RURAL ELECTRIC COOPERATIVE et al., Appellees.

No. 45504.

Marcii 18, 1941.

Leo J. Seifert, Frank W. Senneff, and Erwin L. Buck, for appellants.

Wisdom & Wisdom, for appellees.

Sager, J.—For the sake of brevity and convenience the Hancock County Rural Electric Cooperative will be spoken of as the Cooperative and the other corporate defendants as the Farmers Company. The record before us is long and the arguments extensive. The parties discuss many questions and cite many authorities which we find it unnecessary to analyze here; but the issues upon which the case turns are, as we see them, quite simple. Plaintiff asks that the Cooperative be restrained from connecting its line with that of the Farmers Company, that the latter company and its members be restrained from connecting its line with that of the Cooperative or from buying or using any current generated by the latter company. The answer admits that the connection with the plaintiff's line will be severed and made with that of the Cooperative; and that plaintiff has no standing to challenge the transfer of the Farmers line to its corporate codefendant. The plaintiff is a public utility supplying electricity in the territory with which we are concerned. It is the successor of the Iowa Falls Electric Company.

In 1920 the Farmers Company was organized to purchase and distribute electric current to its 20 members. This energy was purchased of the Iowa Falls company which permitted the Farmers Company to string wires on its poles for the delivery of the current. Originally electricity was bought from the plaintiff and its predecessor and passed through a master meter located at Garner, in Hancock county. This arrangement was later discontinued and the current used by each member was measured by a meter located on his premises. These meters were read by employees of the plaintiff and the bills therefore sent out by it.

During the year 1937 the Cooperative was organized; it made application to the Rural Electrification Administration (hereinafter referred to as REA) for a loan totaling $337,000 and gave a mortgage to secure this and advances which might be made in the future.

Among the extensions of its lines was one which brought it into the neighborhood in which the members of the Farmers Company lived. In January 1939 there was instituted a series of discussions as to whether the Farmers Company line should be transferred to the Cooperative. Earlier in the fall of 1936 an effort was made by the Farmers Company to turn their lines over to the plaintiff, and at its invitation the president, secretary and other members of the Farmers Company met him to talk the matter over. Nothing came of this meeting. On February 14, 1939, at a meeting of the stockholders it was decided by a vote of nine to two to dispose of the Farmers Company lines. A committee was appointed to obtain from the plaintiff and from the REA rates and such other information as might be deemed important.

On February 27, 1939, a special meeting was held at which a representative of the plaintiff and one of the Cooperative appeared. There were talks made by both and each proposed certain rates. After such discussion a vote was taken on the question whether the lines should be turned over to the plaintiff or to the Cooperative. The result was thirteen to one in favor of the Cooperative. The president and secretary of the Farmers Company were authorized to execute a deed and bill of sale of the lines and appurtenances in consideration of the

Cooperative's agreement to "maintain said lines". It was done accordingly.

On this record appellant insists that the transaction was void for various reasons. Since the plaintiff had no interest in the Farmers Company as stockholder or otherwise we find no ground upon which it may base such a contention. It had no contracts by which it was compelled to deliver electricity or to compel acceptance of current by the Farmers Company or its members. It had its representative present at the meeting where the decision to sell was reached and apparently made an attempt to persuade the members that it was to their interest to stay with the plaintiff. Whatever the arguments may have been they were not sufficient to persuade the stockholders. At that time plaintiff's representative made no protest nor was it claimed that the proposed action was illegal and void. On the contrary plaintiff seems to have acquiesced, and continued to furnish current to the members of the Farmers Company until this suit was begun and perhaps since. Appellant-intervener Woodward was represented by proxy at that meeting and is not in a position to complain.

There is in the record no evidence of solicitation by the Cooperative to bring about the transfer, neither is there any evidence of fraud, collusion, or conspiracy. It was a simple business transaction in which the plaintiff lost out.

Plaintiff does not claim to have an exclusive franchise to serve these farmers but bases its claim to relief on the ground that the Cooperative having borrowed money from the United States under the REA, it will be subject to the control and supervision of the administrator designated by the act. It is further urged that if the Cooperative takes over the Farmers Company lines it will be using money in violation of the REA act because it will be furnishing current to others than "to persons in rural areas who are not receiving Central Station service."

Appellant must admit, as it does, that it is subject to lawful competition even to the extent that its business may be destroyed. It concedes that the loan to the Cooperative was valid. It is then reduced to the claim that the Cooperative intends to use government money in maintaining this comparatively insignificant line.

The trial court was right in finding, if it did, that this claim is not proven. Whether the mere upkeep or incidental expenses

of the line out of REA funds would of itself be a violation of which plaintiff may complain we are not called on to decide. We are aware of no law which gives plaintiff a standing in equity under these circumstances. The case of Frost v. Corporation Commission, 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 483, and other appellant's citations do not so hold unless we have missed their true import. The principles involved in this class of cases are discussed at length in Alabama Power Co. v. Ickes, 302 U. S. 464, 58 S. Ct. 300, 82 L. Ed. 374. See also Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U. S. 118, 59 S. Ct. 366, 83 L. Ed. 543.

To sustain the injunction prayed for by the plaintiff would compel (there being no other power company operating in the vicinity) these farmers to deal exclusively with the plaintiff or to revert to the kerosene lamps of their fathers.

As stated at the outset many other questions are argued. These have been considered and found without merit.

Holding as we do that the decision of the trial court was right, it is affirmed.—Affirmed.

HALE, C. J., and STIGER, OLIVER, MILLER, and WENNERSTRUM, JJ., concur.

BLISS, J., takes no part.